IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Kindra S.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 20 C 7040 |
| v. | ) |
| | ) Magistrate Judge Beth W. Jantz |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security,[2] | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Kindra S.'s application for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). For the reasons that follow, Plaintiff's motion for summary judgment [dkt. 22, Pl.'s Mot.] is granted, and the Commissioner's cross-motion for summary judgment [dkt. 25, Def.'s Mot.] is denied. Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by her first name and the first initial of her last name.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi has been substituted for her predecessor.

**BACKGROUND**

I. **Procedural History**

On September 9, 2014, Plaintiff filed a claim for DIB, alleging disability beginning December 1, 2011, due to degenerative disc disease and sacroiliitis. [Dkt. 16-1, R. 480-1, 547-559.] She later amended her alleged onset date to February 1, 2014. [R. 15.] Plaintiff's claim was denied initially and again upon reconsideration. [R. 202-231.] There were three ALJ hearings in this case. The first hearing was held on July 12, 2017, [R. 139-201], and resulted in an unfavorable decision, [R. 235-49]. The Appeals Council reversed, ordering the ALJ to consider Plaintiff's mental impairments [R. 250-3], and a second ALJ hearing was held on August 7, 2018. [R. 41-100.] The ALJ again issued an unfavorable decision [R. 258-78], and the Appeals Council again reversed, this time because the ALJ had not adequately evaluated a treating source opinion, [R. 279-81].

Plaintiff's case was assigned to a new ALJ, who conducted a third hearing on March 5, 2020. [R. 101-138.] Plaintiff personally appeared and testified at the hearing and was represented by counsel, James Schilf. [R. 103.] Vocational expert ("VE") Gary Wilhelm also testified. [R. 118-21, 131-7.] On March 26, 2020, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. [R. 12-30.] The Social Security Administration Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. [R. 1-6.]

II. **The ALJ's Decision**

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. [R. 16-30.] The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of February 1, 2014, through

her date last insured of December 31, 2016. [R. 27.] At step two, the ALJ concluded that Plaintiff had the following severe impairments: degenerative disc disease, osteoarthritis, and affective and anxiety disorders. [R. 17.] The ALJ concluded at step three that her impairments, alone or in combination, do not meet or medically equal one of the Social Security Administration's listings of impairments (a "Listing"). [R. 18-20.] Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with the following additional limitations: Plaintiff should never climb ladders, ropes, or scaffolds, and could no more than occasionally climb ramps/stairs, balance, stoop, crouch, kneel, crawl, bend, or twist; she should be provided a sit-stand option allowing her to stand 1-2 minutes after sitting 30 minutes and allowing her to use a cane as needed to get to and from the workstation; she should avoid all exposure to work hazards such as unprotected heights and dangerous moving machinery; she should never operate motor vehicles for work purposes; and in terms of mental functional capacity, she could understand, remember, and carry out no more than simple routine tasks and perform the same tasks day in and day out. [R. 20-21.]

At step four, the ALJ concluded that Plaintiff would not be able to perform her past relevant work. [R. 28.] At step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy, leading to a finding that she is not disabled under the Social Security Act. [R. 29.]

## **DISCUSSION**

### I.     **Judicial Review**

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

3

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Because the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner and is reviewable by this Court. 42 U.S.C. § 405(g); *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-

4

stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.* at 327.

The ALJ has a basic obligation both to develop a full and fair record and to "build an accurate and logical bridge between the evidence and the result [so as] to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837; *see also Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022). Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413.

**II.  Analysis**

Plaintiff argues that the ALJ erred in rejecting the treating source opinion of her surgeon, Dr. Mok. [Dkt. 22, Pl.'s Mem. at 9-14; dkt. 29, Pl.'s Reply at 2-6.] Plaintiff identifies four reasons why the ALJ's decision to afford no weight to Dr. Mok's opinion was error: (1) the ALJ gave undue weight to evidence of Plaintiff's periods of temporary symptom alleviation; (2) the ALJ did not explain why Plaintiff's period of post-surgical improvement justified rejecting Dr. Mok's opinion for the 2+ year period between the amended onset date and the date of the surgery; (3) the ALJ was wrong to deem Dr. Mok's opinion inconsistent with the medical record; and (4) the ALJ

5

was wrong to conclude that Dr. Mok had failed to provide a clinical explanation for his opinion that Plaintiff needed frequent breaks.

After reviewing the record and the briefs submitted by the parties, this Court agrees that the ALJ failed to give adequate reasons to support her decision to award no weight to the treating source opinion of Dr. Mok. Specifically, in deciding that Dr. Mok's opinion was "inconsistent" with his own treatment notes and the medical record, the ALJ failed to grapple with or even acknowledge the medical evidence supporting Dr. Mok's opinion. Because this failure alone warrants remand, *see Cieszynski v. Kijakazi*, No. 22-2024, 2023 WL 2523499, at *3 (7th Cir. Mar. 15, 2023), the Court does not reach Plaintiff's additional arguments.

Plaintiff's application for benefits was filed prior to March 27, 2017, so the "treating source rule" set forth in 20 C.F.R. § 404.1520c applies. *Cieszynski,* No. 22-2024, 2023 WL 2523499, at *3. Under this rule, a treating physician's opinion about the "nature and severity of a medical condition is entitled to *controlling weight* if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Brown v. Colvin*, 845 F.3d 247, 252–53 (7th Cir. 2016) (*citing Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000)) (emphasis added). The ALJ may deny controlling weight to a treating source's opinion if it is internally inconsistent or inconsistent with other medical evidence. *Clifford,* 227 F.3d at 870-71. When a treating source's opinion is not given controlling weight, the ALJ must consider the following factors: (1) the examining relationship, (2) the treatment relationship, specifically its length, nature, and extent, (3) the supportability of the opinion, (4) its consistency with the record as a whole, and (5) the specialty of the treating source. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Whatever weight the ALJ affords to a treating source, he must give "good reasons" explaining his decision and must not substitute his own judgment for the physician's opinion without relying on other

medical evidence or authority in the record. *See Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Cieszynski,* No. 22-2024, 2023 WL 2523499, at *3; *see also* 20 C.F.R. § 404.1527(c)(2).

The treating source opinion at issue here was given by Plaintiff's surgeon, Dr. James Moon Mok, on July 25, 2018, after treating the patient for about three years. [R. 2958-60; Dkt. 22, Pl's Brief, at 10.] Dr. Mok listed Plaintiff's medically determinable impairments as including: cervical spine stenosis and spondylosis, status post L3-pelvic fusion, post-laminectomy instability, and sacroiliac joint pain. [R. 2958.] Dr. Mok wrote that Plaintiff suffered from neck, low back, and sacroiliac joint pain that could reasonably be caused by those medically determinable impairments and that would render her unable to sustain a regular 40-hour work schedule. [Id. at 2958-59.] Specifically, Dr. Mok opined that Plaintiff's pain "requires frequent breaks and opioid pain medication" and she would be expected to miss about one full day of work per work week "due to pain exacerbation." [Id. at 2859.] The pain also affected Plaintiff's ability to concentrate. [Id.]

Dr. Mok further opined that Plaintiff had no limitation in sitting but did have a more than 50% reduced capacity for climbing, twisting, bending/stooping, squatting/kneeling, crawling; a 20-50% reduction in capacity for standing/walking in an 8-hour day as well as working above her shoulders; and up to 20% reduced capacity in reaching and foot controls. [Id. at 2958-59.] In support of this opinion, Dr. Mok explained that "Patient has advanced degenerative changes resulting in radiographic and clinically important stenosis of cervical and lumbar spine causing pain concordant with imaging. She has undergone multiple complex lumbar spine surgeries and remains in chronic pain requiring frequent interventional pain therapies and opioids." [Id. at 2960.] Dr. Mok's opinion stated that these limitations would apply to the time period prior to December 31, 2016 (Plaintiff's date last insured for DIB benefits). [Id.; R. 27.]

The ALJ gave this entire opinion no weight, concluding that it was "inconsistent with the medical record, including his own treatment notes as documented at Exhibit 26F." [R. 27-28.] The ALJ pointed out that, while Dr. Mok's opinion was written in July 2018 (a year and a half after Plaintiff's date last insured), his clinical records at Exhibit 26F were "more relevant what the claimant's symptoms were as of her date last insured," which was December 31, 2016. [Id. at 27] According to the ALJ, these records showed that "following [Plaintiff's] back surgeries in April/May 2016, the claimant experienced only one symptom exacerbation in October 2016, and that she otherwise reported low pain levels without need of opioid pain medications until April 2017." [Id.] The ALJ's decision continued:

> While Dr. Mok opined that the claimant would be absent once a week due to pain exacerbation his own treatment notes reveal that such pain exacerbations were few and far between. The undersigned further notes that Dr. Mok failed to refer to specific parts of the record or clinical objective findings to support his opinion, including providing a clinical explanation for the claimant's purported need for frequent unscheduled break [*sic*].

[R. 27-28.]

As an initial matter (and as Plaintiff argues [dkt. 22 at 14]), the ALJ's conclusion that Dr. Mok failed to refer to clinical findings to support his opinion is incorrect, so it cannot be a "good reason" to reject a treating source's opinion. Dr. Mok's opinion clearly explains that Plaintiff's pain symptoms are caused by "advanced degenerative changes resulting in radiographic and clinically important stenosis of cervical and lumbar spine … concordant with imaging." [R. 2960.] The Commissioner argues that even if this were a defect in the ALJ's decision, it would not require remand because the rest of the ALJ's analysis was thorough and included valid reasons. [Dkt. 26 at 12.] This Court disagrees because none of the other reasons the ALJ provided for rejecting the treating source opinions are "good reasons."

8

The ALJ's decision to reject Dr. Mok's opinion due to inconsistency with his own notes and the medical record was not a "good reason" to reject Dr. Mok's opinion because the ALJ failed to grapple with any of the medical evidence *supporting* Dr. Mok's opinion. Instead, the ALJ cited to just one exhibit, 26F, in support of the conclusion that Dr. Mok's opinion was contradicted by his own notes. [R. 2070-2173.] That exhibit contains just a fragment of Dr. Mok's treatment notes regarding Plaintiff. It begins with Dr. Mok's notes from a November 10, 2016, appointment, six months after the completion of her two-part surgery in April and May 2016, and it also includes notes from three subsequent visits on March 9, 2017 [R. 2079], May 11, 2017 [R. 2122-23], and June 20, 2017 [R. 2147]. At the November 2016 appointment, Plaintiff reported "almost no pain" and had been "able to wean herself from a large amount of narcotic pain medication." [R. 2070.] But by the June 2017 appointment, Plaintiff was experiencing frequent pain in her tailbone and hips and had restarted her narcotic medications.

The Commissioner argues that there is no error in the ALJ focusing "primarily on the period between plaintiff's April and May 2016 surgeries and her December 2016 date last insured when evaluating Dr. Mok's opinion because that is when Dr. Mok provided the majority of his treatment to plaintiff during the period at issue." [Dkt. 26 at 8.] But this Court cannot consider a justification for the ALJ's decision that the ALJ did not herself provide, *Sec. & Exch. Comm'n v. Chenery Corp.,* 332 U.S. 194 (1947), and the ALJ said nothing to explain that she was focusing exclusively on Dr. Mok's post-surgery notes for that reason; in fact, she said nothing at all to confirm that she was intentionally limiting her review to that subpart of Dr. Mok's notes, as she failed to even acknowledge Dr. Mok's notes from before and after the November 2016 – May 2017 period.

9

The Commissioner goes on to argue that "[a]fter her initial visit with Dr. Mok in 2015, plaintiff's treatment records do not document any treatment from Dr. Mok until April 2016, when he performed a lumbar spine fusion." [Id.] But this is not accurate. Plaintiff was seen by Dr. Mok not once, but *three times* before the surgery, on September 22, 2015 [R. 1271-73], February 4, 2016 [R. 2068-69], and March 25, 2016 [R. 2067, 1826-27], and those notes (which are not contained in Exhibit 26F) corroborate Dr. Mok's opinion that Plaintiff suffered from chronic pain due to her cervical and lumbar spine issues and had for years prior to her initial consultation with him. Given Plaintiff's alleged onset date of February 1, 2014, it is perplexing that the ALJ did not grapple with the medical records demonstrating chronic pain for the more-than-two years leading up to the April and May 2016 surgeries. As Plaintiff argues [dkt. 22 at 11-12], even if those surgeries had forever resolved Plaintiff's chronic pain (which does not appear to be the case), the ALJ could have considered a closed period of disability covering that two-year period. *See Brown v. Massanari,* 167 F. Supp. 2d 1015, 1017 (N.D. Ill. 2001) (explaining that Plaintiff need not establish current disability to be eligible for DIB for prior period of disability that extended at least 12 months).

Dr. Mok's pre-surgical notes appear consistent with the medical opinion he provided in 2018. For example, the initial visit notes from September 2015 indicate that Plaintiff had sought out Dr. Mok for a second opinion regarding her chronic pain in the coccyx, buttocks, low back and sometimes left lateral leg, which had been "gradually worsening over the past three years." [R. 1271.] He noted that she was taking OxyContin and Norco daily for pain. [Id.] Rather than requiring new imaging, Dr. Mok was able to review imaging from June 2014 to assess loss of lumbar lordosis and a positive sagittal imbalance, a mismatch of approximately 20 degrees of lumbar lordosis, and advanced disc degeneration with retrolisthesis at L5-S1 as well as changes at

10

L2-L3. [R. 1273.] While he did discuss a possible surgical intervention with her, he suggested that she first attempt a more conservative treatment of a spinal cord stimulator due to her young age. [Id.] Plaintiff continued to complain of regular pain in the subsequent visits leading up to her April/May 2016 surgeries. [R. 1826-27, 2067-69.] And, contrary to the Commissioner's representation that Plaintiff's period of pain relief began in May 2016, immediately following the April/May 2016 surgery [Dkt. 26 at 7.] Plaintiff continued to report residual tailbone pain at her initial visit following the surgery on June 23, 2016, and had returned to taking OxyContin and Norco daily following the surgery. [R. 2059.]

Thus, while Dr. Mok's notes in exhibit 26F do indicate that Plaintiff eventually experienced a period of relief from her chronic pain symptoms between November 2016 and May 2017, the rest of his notes from before and after this time period are consistent with his 2018 opinion that she experienced pain exacerbations that would require her to miss work for one full day per week. The ALJ does not grapple with this evidence or even cite to it in her discussion of Dr. Mok's opinion, concluding instead that Dr. Mok's notes indicate that Plaintiff's pain exacerbations were "few and far between." *See Cieszynski*, No. 22-2024, 2023 WL 2523499, at *3 (ALJ's rejection of treating source opinion based on inconsistency was not a "good reason" because ALJ "did not grapple with the fact that the record shows that the benefits were temporary, even though he partially acknowledged the temporary nature of the relief elsewhere in his decision, where he discussed medical records reporting that [Plaintiff] experienced significant pain and limitations even after treatment."); *Hardy v. Berryhill,* 908 F.3d 309, 312 (7th Cir. 2018) (explaining that the "ALJ must grapple with lines of evidence that are contrary to her conclusion."). Moreover, even that evidence of Plaintiff's temporary improvement is not necessarily inconsistent with Dr. Mok's opinion, as the Seventh Circuit commented in *Cieszynski:* "it is possible for a person to get 'some

11

benefit' from treatment yet not enough to be capable of more than part-time work." No. 22-2024, 2023 WL 2523499, at *3 (*citing Clifford v. Apfel,* 227 F.3d 863, 871 (7th Cir. 2000)).

The Court therefore concludes that the ALJ failed to supply "good reasons" supporting her rejection of Dr. Mok's treating source opinion. *Cieszynski*, No. 22-2024, 2023 WL 2523499, at *4 ("Improperly assessing a treater's opinion is enough to require reversal.").

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [dkt. 22] is GRANTED, and the Commissioner's motion for summary judgment [dkt. 25] is DENIED. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**

Date: 6/7/23

_____
BETH W. JANTZ
United States Magistrate Judge